and Farrington v. Department of Transportation, 2023-1901. Mr. Devine, we're ready when you are. May it please the court, my name is Tom Devine. I'm giving the oral argument for petitioner Farrington. In 2012, as clarified in 2017, by statute, Congress overturned civil service and constitutional case law denying anti-retaliation rights for duty speech. But there was a qualifier for a narrow group of employees whose normal duties included a principal job function to regularly investigate wrongdoing. They would have a slightly higher burden of proof. They would have to prove an ultimate conclusion of reprisal rather than just a causal link to protected speech. In this case, the board translated the narrow scope of duty speech to cover virtually all communications permissible in a job description, or that means basically anything which is relevant to their job or pretty much any topic that they wanted to whistle about. And for this comprehensive universe, the board then translated the slightly increased burden to not require application of the whistleblower protections that's statutory burden of proof structure for contributing factor analysis and then affirmative defense. This decision cannot coincide with the statute as enacted by Congress. Can I go? I mean, I know there were a lot of arguments made here, but I thought at least one alternative the board rested on was simply that this disclosure that was alleged didn't come under the whistleblower protected disclosures. 2302, I thought one of the bases for the at least one of the bases for the MSPB decision was that this was not a protected disclosure covered by 2302, which didn't have anything necessarily to do with the more recent amendments to the statute. In its final decision, the board presumed that she had engaged in protected speech and said that even if she had, she had met her statutory burden to prove reprisal. And our concern is that they discarded the statutory structure in order to make that conclusion. But if they just relied on 2302 without trying to rest on any of the new amendments or what existed previously, aren't we just looking here at whether or not this was a protected disclosure? I'm sorry, Your Honor? Aren't we looking at simply whether or not hers was a protected disclosure under 2302, just like any employee forget whether it was her normal duties or whatever, just looking at whether it was a protected disclosure? We believe absolutely that she meant protected disclosures and contested that intensively. So what was the protected disclosure? I was a little confused because it seems in your brief, you relied, that you weren't disputing the conclusions with respect to the May 23, May 2003 report, that you're talking exclusively about the disclosures to Mr. George on May 22, 2003. Am I correct? We think her protected disclosures were the challenges to the division manager, that the corrective action was sustaining unsafe conditions, and that it was her May 3 report and then all the subsequent discussions and interviews after those confrontations and turning in the report with the chain of command and with the National Transportation Safety Board. Well, the board found there were no violations of law. Procedures were in compliance with regulation. And so what were the, the board found she had no reasonable belief, no basis objectively for a reasonable belief that she was covered by the whistleblower law. Well, we think the objective basis for finding that she was covered by the whistleblower law is how the audiences responded to her concerns. The division manager said that we'll appoint an independent team of specialists to do a review of your concerns. They wouldn't do that if there weren't a reasonable belief for her concerns about ongoing safety hazards. The National Transportation Safety Board investigated it in depth. They wouldn't have done that if there weren't a reasonable belief for her concerns. But we believe that issue really isn't before the court right now, that the board did presume that she would have a reasonable belief for protected speech and said that even then she hadn't proved reprisal. And how they came to that conclusion is our concern, Your Honor. Wasn't she fired because she was unavailable for work and was disruptive? I'm sorry, sir. Wasn't she fired because she was unavailable for work and was disruptive? She was not fired for being disruptive, although that was a change in, explanation of the change in her duties. The agency said they'd like her to come back. She was fired on her pretext, sir. They were, the agency said that they had to fill her position immediately and she was recovering, she was on therapy and out of medical leave. Well, that's a little, I think you're, that's a little not clear statement of the facts. They didn't say they had to, she had to file the position immediately. She left work in July of 2003 and she was absent at least until August 11th where there was a recommendation made in 2004. That's over a year. She's been gone over a year. And it was then that the government said, well, you're continued unavailability. We're removing you based on your continued unavailability for full-time duty. It wasn't right away. It was after she had been absent for a year. Oh, yes. We wouldn't challenge that, Your Honor, but the government's reason. And there was no, there was no information. In February, her, you know, I don't want to talk about medical information, but even in, when she reported her situation in February, it was unclear when, if ever, she was going to return. So the government, having waited 14 months or 13 months, then said, hey, we need this position filled. We're removing you because it's not, you're not continued, you don't have continued availability for full-time duty. How is, given the passage of time, how are you linking that to necessarily being a reprisal for something that had happened, well, more than a year before? When the government let Ms. Farrington go, they said we can't wait any longer. And then they waited for another year. So we think that that raises issues before they filled her position. So we think that raises issues of pretext. But that's not really the issue that's before the court that we're challenging for error. We're saying that the definition of duty speech was comprehensive when it's only allowed to be by statute for a very narrow class of people. And that even with the duty speech case, you need to consider and apply the whistleblower protection that statutory burdens approve. Contributing factor analysis, which is basically for relevance, and then find if there's repellatory intent on the affirmative defense. That's what the board presented to the court. They presumed protective speech and they didn't apply the statutory standards that you're fleshing out with specific bets before concluding there was reprisal. And just because it's a duty speech case doesn't mean that you can skip contributing factor and the affirmative defense of independent justification. But counsel, even aside from what she was hired to do, isn't reprisal required anyway? Do you have to prove reprisal for protected acts? And she failed to prove reprisal. She didn't have to prove reprisal for her burden of proof. That judgment is an ultimate conclusion, which comes after considering the agency's affirmative defense. The contributing factor standard doesn't include a requirement for causation. It doesn't include a requirement for retaliatory intent. It just basically says that any factor which has any impact that affects the decision in any way meets that burden. The increased burden to prove reprisal instead of causation comes in the agency's affirmative defense, your honor. Instead of having to prove that their action was independent of whistleblowing, they only have to prove that it was independent of reprisal. And that is a higher burden for the whistleblower to overcome and it's a lesser burden for the agency. But that's the one that applies. In the agency, the board did not apply the clear and convincing evidence standard. The board concluded that the latches reason for ignoring it initially was not valid. They vacated the reason that the administrative judge didn't apply clear and convincing evidence. But then they didn't do it either. You can't reach that ultimate conclusion of retaliation of reprisal without considering both halves of the statutory burdens of proof. And Congress was very clear that they had a modest burden of proof for the employee because what they're looking for in the attendance statute is to require that the agency defend its actions on grounds that were independent of the whistleblower protection. That analysis has not occurred here. You're into the time you wanted to save for rebuttal? Yes, sir. Continue or save it? I'd like to save the rest of it. Thank you. Okay, Ms. Tantum. Good morning. May it please the court. The court should affirm the board's decision denying corrective action sought by Ms. Farrington. The board properly found that Ms. Farrington made no disclosures protected by 5 U.S.C. 2302b8 since she could not have reasonably believed she was disclosing a violation of law or a danger to public safety. Thus, there's no reason for the court to consider Ms. Farrington's arguments related to separate issues such as arguments related to duty speech arguments. That's what I was going to ask you. The board didn't go into, I mean, there were amendments made and there were changes made, but I thought the board was just saying, never mind. We're just going to go on a regular, not considering the normal course of duties or any other limitations. We're just going to go on the normal, was this a protected disclosure? I understood the board, too, reached the issue of normal course of duties and the issue of principal job function and find that those higher burdens applied to Ms. Farrington. However, as an independent reason, the board concluded that these disclosures simply didn't fit the criteria for being protected. So there were two alternatives? Yes, that's our understanding. And why weren't they turning to the second alternative so we can get rid of the new statutory changes? I'm a little confused because the disclosure they talked about in the appeal seems to have been this 2003 meeting with Mr. George, but your friend kind of persists in talking about all of the disclosures. So why were they all insufficient? Why were they all not, the May 2003 report, which was both, it was disclosures one and two, and it was disclosed to Mr. Walker, who was the division manager for the Southern Region Flight Standards District Office. The board concluded that the report contained, well, it basically stated that, really only a brief and vague description, that she had discussed the past content of manuals and a possible violation of a regulatory requirement, which was vaguely stated, but that she had worked with her supervisor, who was the acting principal operations inspector and Airtran, to correct the deficiencies, and that they had been corrected. In that case, no violation was existing at the time, years later, when she was writing this May 2003 report. The May 2003 report is an 11-page memo that, a lot of it is simply describing her history with the FAA from years earlier, and therefore, the Whistleblower Protection Enforcement Act requires that an employee identify a specific law, rule, or regulation that she believes has been violated. Here, there's no identifiable violation, and the court required that in Friesbach v. Department of Veterans Affairs in 2017. The vagueness makes this insufficient to be a protected disclosure. And in addition, in May 2003, when she met with Mr. George for the NTSB investigation, she told him that Airtran was in compliance with the federal aviation regulations as far as, and that's stated in the NTSB report at Appendix 126. The administrative judge found that the discussion of her statements in that NTSB report was the best indication of what she had told Mr. George at Appendix 38. Therefore, that was the reason that the May 2003 report, she could not have reasonably believed when she wrote it that there was a continuing violation of law. As far as reprisal goes, your friend, I didn't catch this, if it's in the briefs, that he seemed to be even though, yes, he agreed that she was essentially absent for 13 months before they took this action, but then he says, but it proves animus or it proves reprisal because they didn't then fill the position for another year. Is that in the record? And is there any discussion of that in the record? I'm not certain of that question, Your Honor, since I did not see it come up in the briefs. Well, that's what I was going to ask you. I didn't see it either. Okay. Let me just say, I mean, we get a lot of old cases, particularly in the veteran's space, because sometimes it goes back and forth in terms of the duty to assist. This all happened 20 years ago, 22 years ago. What on earth is going on here? Well, see, number one, after Ms. Farrington's removal in October 2004, she waited five years until, I believe it was in 2009, that she submitted an appeal to the board. And it's not entirely clear why there was a delay of that sort, except that she had a conversation with the Office of Special Counsel, I believe. And so that sort of appears to have triggered her filing an appeal to the board. And then, beginning in 2009, there was an administrative judge's decision in 2010. Then, while I think her board appeal was being pursued, the Whistleblower Protection Enforcement Act was passed, and that led to, I think, a remand to the administrative judge to consider that effect. And then, yeah, after a hearing in 2013, I think there was a delay of three years until 2016 until there was a decision following that. I think that's kind of how we've ended up with this 20-year span of time. One of Ms. Farrington's other arguments is that there was inadequate funding for travel, resulting in a safety risk that she says she disclosed in the May 2003 report. However, the administrative judge found that this was not supported by the testimony and the evidence because, number one, she spent nearly two months in Atlanta in 2002, in June and September, observing and assisting AirTran with improving and redeveloping its initial flight attendant training program. And then, after that time, prior to the May 2003 disclosures, the administrative judge made a finding of the fact that she could have flown to Atlanta at any time to inspect the flight attendant training by AirTran. It was only overnight trips that were limited due to agency budget issues. And even if the administrative judge wasn't correct in making those conclusions, the danger to safety that she alleged isn't sufficiently substantial and specific to warrant protection. Her allegation of danger is based on an assumption that the flight attendants weren't adequately trained in her absence. And that's much like Chambers 4, the court's decision, in which there was a disclosure of budget numbers. The court found that the budget necessarily limits the extent of protection of public health and safety, but that wasn't enough to show a disclosure of a danger to public safety. And overall, as we pointed out, we believe Ms. Farrington waived her challenge to the board's conclusions as to the May 2003 report by raising no specific challenge to the administrative judge's conclusion that that report did not contain protected disclosures. Would you say the question of the retroactivity of the statute is irrelevant? Well, I think it's irrelevant if the court concludes that the disclosures are not protected. The court finds that the disclosures are not protected because they simply are not of the type where Ms. Farrington could have a reasonable belief that she was disclosing a violation of law or danger to public safety, then it is irrelevant. But if the court were to disagree with the board's conclusions as to reasonable belief, then the question of retroactivity could come into play in determining whether Ms. Farrington showed reprisal. So your view is we don't need to reach it? Correct, correct, Your Honor. Yes. The interview by Mark George, which is disclosure number three, during the interview, as we noted, Ms. Farrington stated in the NTSB report that she says AirTran is in compliance with the federal aviation regulations, so she can't have simultaneously believed that there was a violation of the regulations, so therefore she could not have reasonably believed that AirTran was violating 14 CFR 121.417. And her conversation with Mr. Walker, this disclosure four, covered the same issues as that previous discussion with Mr. George, so it's protected for the same reasons. And one of the personnel actions that was alleged was found by the board not to be a personnel action under 5 U.S.C. 1221E1, for which the board could provide corrective action. That's because it was the alleged threat of removing her, and the administrative judge credited the testimony of one of the people at the counseling session that he did not threaten her with removal, and the court would have to discredit his testimony and reweigh the evidence to find that the administrative judge erred in reaching that conclusion. With regard to the burden to show reprisal, I think Ms. Farrington's counsel has acknowledged that there is a burden on the petitioner to show reprisal. The argument that the clear and convincing burden on the agency to show that it would have taken an action regardless of whistleblowing is irrelevant to the question of reprisal raised in 2302F2. And Ms. Farrington did not demonstrate reprisal as the board concluded, and it doesn't matter whether the court looks at retroactivity or not, even if the 2018 NDAA language applied, the administrative judge and board still properly found that her principal job function was as described in her position description, and therefore she could not show that she was of the type of employee who did not have to show reprisal. And in fact, she did not show reprisal because the administrative judge found no evidence that the removal was taken in reprisal for any disclosures instead. She had been absent from work for 14 months with no projected return date. The deciding official stated that he wanted her to come back to work, but he needed a cabin safety inspector and needed to have someone working in that position. He wasn't aware of disclosures one, two, and four in any event. And the counseling session, again, one of the members of the team at that counseling session was not aware of disclosures one, two, three, or four, and there was evidence that the counseling session was intended to assist Ms. Farrington in interacting with Airtran. And as for the moratorium, again, Mr. Moyers had pointed out that he had discussed with her how she was coming across towards Airtran during her surveillance activities as early as 2002 before the disclosures, and she was resistant to treating a disclosure Airtran made to her as a voluntary disclosure of a violation rather than investigation, which was a program that FAA was pursuing, a more customer-oriented approach. So given, number one, the Board's conclusion that Ms. Farrington could not show that she reasonably believed she was disclosing a violation of law or a danger to public safety, and also for the reason that she had to but did not demonstrate reprisal for the disclosures, the Court should affirm the decision of the Board. The Court has no further questions. Thank you, Counsel. Mr. Devine has some rebuttal time. Thank you, Your Honor. The government has argued that Sir, before you get to that, I have one quick question. My understanding is that on appeal, you only raised, with respect to disputing whether something was a disclosure number three. You didn't press disclosures number one and two. Am I misreading your brief? I continue to advocate all four disclosures, which the administrative judge said were protected. My question is, though, did you say that in your brief? I read your brief as only arguing with respect to disclosures three. Am I misreading it? Can you show me in the brief where you made the arguments with respect to the other disclosures? We had briefed it thoroughly below, Your Honor. We didn't concentrate on that in this pleading because we were trying to address the issues that the Board raised and made finding sense. Okay. All right. The government had said that and the administrative judge that Ms. Farrington didn't engage in protected speech because the NTSB and the FAA disagreed with her. We don't think that's really an issue before the Court since the Board presumed it. But she certainly did engage in protected speech. You've said repeatedly protected speech. We're talking about protected disclosures. Protected disclosures. Yes, ma'am. Thank you. She certainly engaged in protected disclosures. You don't have to be right. You can be wrong. The law only requires a reasonable belief. And if her disclosures were Objectively reasonable belief. An objective reasonable belief. And there's really no dispute that the FAA thought that her disclosures were sufficiently reasonable to set up a program for them. And the NTSB thought they were sufficiently reasonable to work with her and follow through. We think that she's met the reasonable belief standard, whether or not she was ultimately correct. The government also stated that the 2017 language for a duty speech in the proposed case is not retroactive. And we don't think that's well taken. The Board found that it was retroactive. Congress said that this was just clarifying amendments that were retroactive. This Court in the Salazar decision affirmed that Congress was right on that, because the Office of Special Counsel had requested clarifying language due to it being ambiguity in the statute. There shouldn't be any concern about that. I'd like to emphasize that the primary issue before the Court is, in addition to applying the burdens of proof to duty speech, is the boundaries of duty speech. That's why the government said that the Board said that she would be subject to the higher burden of proof. The boundaries of duty speech are not determined by a job description, which is the Board's baseline boundary for duty speech. A job description, as the Supreme Court said in the Garcetti case, can include all sorts of things that aren't responsibilities, but they're activities which are discretionary that an employee can take at their personal initiative. To be duty speech, it has to be work that was assigned, that, as the Supreme Court said, was created and commissioned by the employer. In this case, even if we use the job description boundary, there is nothing in there that assigned Ms. Farrington, the whistleblower, to confront the division manager twice, to go to the National Transportation Safety Board with her concerns. These were personal initiatives. They're outside the scope of duty speech, and it's Section B-8, not B-2, that should be governing this decision. Thank you, Counsel. The case is taken under submission.